Michael Zoldan; AZ Bar No. 028128
Amanda Kuklinski; AZ Bar No. 035676
**ZOLDAN LAW GROUP, PLLC**
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
Tel & Fax: 480.442.3410
mzoldan@zoldangroup.com
akuklinski@zoldangroup.com

Attorneys for Plaintiff
Tabitha Sanchez-Wheeler

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Tabitha Sanchez-Wheeler**, an Arizona resident;<br><br>    Plaintiff,<br><br>    v.<br><br>**Community Bridges, Inc.**; an Arizona corporation;<br><br>    Defendant. | Case No.<br><br>**VERIFIED COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Tabitha Sanchez-Wheeler ("**Plaintiff**") for her complaint against Defendant Community Bridges, Inc. ("**CBI**") hereby alleges as follows:

## **PARTIES**

1.  Plaintiff is, and at all times relevant hereto was, a resident of Cochise County, Arizona.

2.  Upon information and belief, Community Bridges, Inc. is an Arizona corporation which is registered to conduct business and is currently doing business in the State of Arizona.

## JURISDICTION AND VENUE

3. All acts complained of herein occurred in Tucson, Arizona, and this Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to the Americans with Disabilities Act and the ADA Amendments Act (collectively referred to as "**ADA**"), 42 U.S.C. 12101, *et seq.*,

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

6. Plaintiff was, at all relevant times, an employee of CBI within the meaning of the ADA.

7. Personal jurisdiction in this Court is proper.

8. Venue in this Court is proper.

9. On or about February 25, 2021, Plaintiff filed a complaint with the EEOC.

10. January 11, 2022, the EEOC issued a Right to Sue letter.

11. This complaint is brought within 90 days of Plaintiff's receipt of the EEOC's Right to Sue letter.

12. Plaintiff has exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

13. Plaintiff began working for CBI in approximately May 2019 as a member of the Crisis Mobile Team.

14. As a member of the Crisis Mobile Team, Plaintiff was responsible for responding to behavioral health crises and providing mental health support in response to crisis hotline calls or police requests.

15. When responding to a call, the Crisis Mobile Team does a basic mental health assessment and coordinates appropriate treatment, i.e. hospitalization.

16. Following a crisis call, CBI coordinates with treatment providers regarding follow up care.

17. Plaintiff has diagnoses of Major Depressive Disorder, Anxiety, and Post-Traumatic Stress Disorder (collectively, "mental health diagnoses").

18. In August 2020, Plaintiff received an Arizona medical marijuana card for management of her mental health diagnoses.

19. In August 2020, Plaintiff provided a copy of her medical marijuana card to CBI.

20. Plaintiff continued to hold a valid Arizona medical marijuana card from August 2020 throughout the remainder of her employment with CBI.

21. In September 2020, Plaintiff attempted suicide.

22. A friend called the crisis line and CBI responded to the call.

23. Plaintiff's direct supervisor, Kelli Trueba ("Trueba"), was the manager assigned to her call and therefore was aware of her suicide attempt.

24. Trueba also would have gained information about Plaintiff's mental health diagnoses and follow-up treatment plan through follow-up care and communication with Plaintiff's providers.

25. Following Plaintiff's crisis call, Trueba told Plaintiff she sequestered her

records so others at CBI would not be able to view them nor even be aware of their existence.

26. Instead, as described below, Program Manager Alma Barraza ("Barraza") and Clinical Lead Patty Demeroto ("Demeroto") were informed of Plaintiff's suicide attempt without having any legitimate reason to know this information.

27. On January 29, 2021 at 7:17 p.m., Plaintiff emailed Barraza, Trueba, Demeroto, Crisis Mobile Team Lead Kelly Magrady ("Magrady") and Clinical Manager Rachel Whaley, raising a number of safety concerns regarding her employment with CBI.

28. Plaintiff was not working at the time and was not scheduled to work until 10:00 a.m. the following day.

29. At 7:33 p.m. on January 29, 2021, Plaintiff received a phone call from Demeroto and Barazza.

30. Plaintiff informed Demeroto and Barazza that she was at a restaurant but was able to speak to them briefly.

31. Rather than address Plaintiff's email, Demeroto and Barazza repeatedly brought up Plaintiff's September 2020 suicide attempt.

32. During this January 29, 2021 phone call, Barazza asked Plaintiff if she needed a "break," indicating she was "concerned" about Plaintiff.

33. Neither Demeroto nor Barazza had any legitimate reason to access Plaintiff's crisis records and should not have been able to do so.

34. The January 29, 2021 phone call is the first time Plaintiff was aware that her supervisors accessed her sequestered records and received her personal health information.

35. On January 30, 2021, Plaintiff arrived for her regularly scheduled shift at

approximately 10:00 a.m.

36. Approximately 30 minutes after Plaintiff punched in for her shift, Barraza and Magrady asked to meet with her.

37. Barraza again brought up the September 2020 suicide attempt, stating she was "worried" about Plaintiff and wanted to make sure she was okay.

38. They asked Plaintiff to take a breathalyzer as well as a drug test.

39. They did not provide her a reason for requesting these tests.

40. Plaintiff agreed to the tests but informed Barraza and Magrady that she was a medical marijuana cardholder and likely would test positive for THC.

41. Barraza stated that was okay, but HR wanted to "go through the motions."

42. CBI's drug testing policy states that "[e]mployees may be required to submit to a drug and/or alcohol test based on a reasonable suspicion that their ability to perform work safely or effectively may be impaired."

43. CBI's substance policy states that an employee with a medical marijuana card will not receive any adverse consequences for testing positive for THC unless the company believes in good faith that the employee was impaired while at work.

44. Plaintiff underwent a breathalyzer and urine drug screen on January 30, 2021.

45. Plaintiff's breathalyzer test was negative for alcohol.

46. Defendant suspended Plaintiff pending the results of her drug test.

47. On February 4, 2021, Plaintiff resent her medical marijuana card to HR Generalist Kimberly Courter at her request.

48. Ms. Courter again refused to provide Plaintiff for the basis for her drug test, and instead simply cited the drug testing policy.

49. When Plaintiff's drug testing came back positive for THC the company terminated her employment for a positive drug screen on or about February 10, 2021.

50. Prior to January 30, 2021, Plaintiff's last shift worked was on January 26, 2021.

51. Plaintiff was not impaired during her January 26, 2021 shift, nor did she appear to be impaired at work.

52. Plaintiff was not impaired during her January 30, 2021 shift, nor did she appear to be impaired at work.

53. Defendant terminated Plaintiff because of her disability-related marijuana use and/or because of her disability-related September 2020 suicide attempt.

## COUNT I
## DISCRIMINATION UNDER
## THE AMERICANS WITH DISABILITIES ACT

54. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

55. Plaintiff satisfied her administrative exhaustion requirements by filing a disability discrimination charge with the EEOC and filing this complaint within 90 days of receiving her Right to Sue letter.

56. The ADA prohibits discrimination against a qualified individual with a disability in regard to terms, conditions and privileges of employment.

57. Plaintiff has a physical or mental impairment that substantially limits a major life activity.

58. In the alternative, the length of time during which Plaintiff has experienced symptoms, from which she will continue to suffer, constitutes a record of impairment.

59. In the alternative, Plaintiff was regarded as having a disability under the ADA.

60. Plaintiff has a diagnosis of Major Depressive Disorder, Anxiety, and PTSD, which constitute disabilities as defined by the ADA.

61. Plaintiff was qualified to perform the essential duties of her position.

62. Upon information and belief, Defendant treated Plaintiff disparately as compared to other similarly situated non-disabled employees because of her disability.

63. Defendant discriminated against Plaintiff by terminating her due to her disability. Such termination constitutes adverse employment action as contemplated by the ADA.

64. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, inter alia, termination of employment.

65. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant CBI as follows:

A. An award of damages for all counts in an amount to be proven at trial;

B. An award of compensatory and punitive damages in an amount to be proven at trial; and;

C. Reasonable attorneys' fees and other expenses under the ADA pursuant to 42 U.S.C. § 12205;

D. An award of back pay and front pay;

E. Pre- and post-judgment interest;

F. Any other remedies or judgments deemed just and equitable by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED March 21, 2022.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Amanda Kuklinski
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2022, I electronically transmitted the foregoing document to the United States District Court, District of Arizona, Court Clerk, using the CM/ECF System. All counsel of record are registrants and are therefore served via this filing and transmittal.

By: /s/ Ashley Peschke

## **VERIFICATION**

Plaintiff Tabitha Sanchez-Wheeler declares under penalty of perjury that she has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on her personal knowledge, except as to those matters stated upon information and belief, and as to those matters, she believes them to be true.

_____
Tabitha Sanchez-Wheeler