**GRASSO LAW FIRM, P.C.**

2250 East Germann Road, Suite 10
Chandler, Arizona 85286
(480) 739-1200

Robert Grasso, Jr., Bar No. 015087
Robert J. Lydford, Bar No. 030649
Karl J. Gruse, Bar No. 020170
rgrasso@grassolawfirm.com
rlydford@grassolawfirm.com
kgruse@grassolawfirm.com
Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Tabitha Sanchez-Wheeler, an Arizona resident,<br><br>Plaintiff,<br><br>v.<br><br>Community Bridges, Inc, an Arizona corporation,<br><br>Defendant. | Case No. 4:22-cv-00135-RM<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>***(Oral Argument Requested)*** |

Pursuant to Rule 56, Fed. R. Civ. P., Defendant Community Bridges, Inc. ("Defendant" or "CBI") moves for summary judgment on all of Plaintiff's claims.

This Court should dismiss all of Plaintiff's claims because she cannot offer any evidence to meet the required elements of a claim of discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101.

First, Plaintiff cannot show that she had a disability under the ADA. Second, she did not inform CBI about any alleged disability. Third, she did not request any

1

accommodation for her alleged disability. Fourth, there is no evidence that CBI took any adverse actions against her *because of* any alleged disability.

Finally, with respect to Plaintiff's marijuana use, the ADA does not require an employer to accommodate an employee's use of marijuana at all, let alone when an employee works in a safety-sensitive position like Plaintiff did.

This Motion is supported by the following Memorandum of Points and Authorities and CBI's Separate Statement of Facts ("SSOF").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    FACTUAL BACKGROUND

Plaintiff claims that CBI violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101. (*See* SSOF at ¶ 1). Plaintiff asserts that CBI discriminated against her because she used marijuana and/or because she attempted suicide approximately five (5) months prior to her termination. (*Id*. at ¶ 2). Plaintiff does not assert any other basis for her claim of discrimination under the ADA. (*Id*. at ¶ 3). Nor does Plaintiff assert any other legal causes of action besides her claim of discrimination under the ADA. (*Id*. at ¶ 4).

Plaintiff was hired as a mobile crisis peer support specialist in approximately May of 2019. (*Id*. at ¶ 5). In her role at CBI, Plaintiff was responsible for responding to crisis calls from first responders, jails, hospitals, other providers, and the community at large, to help individuals experiencing significant mental health emergencies. (*Id*. at ¶ 6).

Plaintiff served in a 24-hour "on call" position, which required her to respond to crisis situations 24 hours per day. (*Id*. at ¶ 7). Plaintiff was required to drive a vehicle to multiple sites per shift in order to respond to crisis calls. (*Id*. at ¶ 8). Plaintiff's job position was therefore considered a "Sensitive Position" under Section 3.4 of CBI's Drug and Alcohol Policy, which defines a "sensitive" position as "any position, which requires the performance of physical or supervisory tasks directly affecting operations, which, if

performed improperly, could result in injury or death to employees or others or could result in significant property damages," as well any position that "requires responsibilities with a high degree of trust and confidence, frequent interaction with the public, provider agencies, children, schools, parents, police departments, and other community agencies." (*Id*. at ¶ 9).

Because Plaintiff worked in a safety-sensitive position, she was subject to both "random" testing and "reasonable suspicion" testing under Section 6.2 of the Drug & Alcohol Policy, which required employees such as Plaintiff to submit to a drug test "based on a reasonable suspicion that their ability to perform work safely or effectively may be impaired." (*Id*. at ¶ 10).

Under the Drug & Alcohol Policy, CBI considered several factors to determine whether to conduct reasonable suspicion testing, including the following factors:

- A pattern of abnormal conduct;
- Unusual, irrational, or erratic behavior;
- Sudden changes in work performance, and
- Information provided either by reliable and credible sources or independently corroborated.

(*Id*. at ¶ 11).

On or about January 30, 2021, CBI determined that it should conduct reasonable suspicion testing because at least two different CBI employees, including Plaintiff's immediate supervisor, believed Plaintiff's behavior was "abnormal," "unusual," "erratic," "amped up," "aggressive," and "defensive," which was demonstrated by glassy eyes and rapid, non-stop talking where Plaintiff bounced from one topic to another without allowing anyone else to speak. (*Id*. at ¶ 12). In fact, Plaintiff's behavior was so concerning that her supervisor, Alma Barraza, abandoned her normal routine the

following morning and went to the office to meet with Plaintiff in person and ensure that Plaintiff was able to work safely. (*Id*. at ¶ 13).

Plaintiff failed her drug test by testing positive for marijuana. (*Id*. at ¶ 14). CBI terminated Plaintiff's employment because she failed the drug test. (*Id*. at ¶ 15).

There is no admissible evidence that CBI terminated Plaintiff because of a disability or because of her suicide attempt more than five (5) months prior to her termination. (*Id*. at ¶ 16). Likewise, there is no admissible evidence that Plaintiff ever requested an accommodation for any disability. (*Id*. at ¶ 17). In fact, Plaintiff admits that she never even claimed to have a disability when she was employed at CBI, let alone that she requested an accommodation under the ADA. (*Id*. at ¶ 18).

There is no admissible evidence that CBI acted with malice or reckless disregard for any of Plaintiff's alleged rights under the ADA. (*Id*. at ¶ 19).

## II.    LEGAL ARGUMENT

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  In this case, Plaintiff's claims fail as a matter of law because Plaintiff cannot offer any admissible evidence to create a genuine issue of fact as to any of the required elements of her ADA discrimination claim.

### A.    CBI Had No Duty to Accommodate Any Disability Because Plaintiff Did Not Notify CBI About a Purported Disability Or Otherwise Request Any Accommodation Under the ADA

CBI had no legal obligation to unilaterally determine whether Plaintiff required an accommodation. Rather, under the ADA, Plaintiff was required to notify CBI if she needed an accommodation. *See Young v. Arizona Summit L. Sch. LLC*, no. CV-16-03490-

PHX-DJH, 2020 WL 954990, at *8 (D. Ariz. Feb. 27, 2020) (finding that the defendant was not required to "speculate as to the extent of [plaintiff's] desire for an accommodation") (alteration added); *see also Bedeski v. Boeing Co.*, 2015 WL 5675427, at *3 (W.D. Wash. Sept. 25, 2015) (quoting *Gantt v. Wilson*, 143 F.3d 1042, 1046–47 (6th Cir. 1998)) ("An employer is not required to speculate as to the extent of an employee's disability or the employee's need or desire for an accommodation.").

Plaintiff would not qualify for an exception to the foregoing rule because (1) there is no evidence that Plaintiff ever claimed to have a disability; (2) Plaintiff never claimed to be experiencing workplace problems because of a disability, and (3) there is no evidence that CBI knew that Plaintiff had a disability that was so severe it prevented her from requesting a reasonable accommodation. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001).

**B.    The ADA Does Not Require an Employer to Accommodate an Employee's Use of Marijuana**

Under 42 U.S.C. § 12210(a), "the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." *See James v. City of Costa Mesa*, 700 F.3d 394, 397 (9th Cir. 2012).

Section 12210(d)(1) defines "illegal use of drugs" as "the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act." Marijuana qualifies as an "unlawful" drug because it is designated as a "Schedule I" drug under the Controlled Substances Act ("CSA"), 21 U.S.C. § 812. *James,* 700 F.3d at 402 ("To conclude that use of marijuana for medical purposes is *not* an illegal use of drugs under the ADA would undermine the CSA's clear statement that marijuana is an unlawful controlled substance that has 'no currently accepted medical use in treatment in the United States.'" 21 U.S.C. § 812(b)(1)(B).") (italics in original); *see also id*. at 403

("Accordingly, in light of the text, the legislative history, including related congressional activity, and the relationship between the ADA and the CSA, we agree with both district courts that have considered the question, as well as the Department of Housing and Urban Development and the United States as amicus curiae, in concluding that doctor-supervised marijuana use is an illegal use of drugs not covered by the ADA's supervised use exception.").

Because Plaintiff's use of marijuana is not protected under the ADA, her claim that CBI discriminated against her based on her use of marijuana fails as a matter of law. Of course, even if it were assumed, for the sake of argument, that the ADA provided an accommodation for marijuana (which it does not), Plaintiff's claims would still fail as a matter of law because CBI's drug testing policy was reasonably designed to protect the safety of Plaintiff and others while Plaintiff worked in a safety-sensitive position, particularly when she drove to and from crisis calls approximately 3-6 times per shift, where she was required to meet with persons experiencing mental health emergencies. *See* 42 U.S.C. § 12113(a) ("It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter."); *see also* 42 U.S.C. § 12113(b) ("The term 'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace.").

**C.    Plaintiff's Prior Suicide Attempt Does Not Qualify As a "Disability" Under the ADA**

The ADA defines a "disabled person" as an individual who has a "physical or mental impairment that substantially limits one or more of the individual's major life

1    activities." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

2    "Major life activities" includes "caring for oneself, performing manual tasks, seeing,

3    hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

4    learning, reading, concentrating, thinking, communicating, and working." *Shields v.

5    Credit One Bank, N.A.*, 32 F. 4th 1218, 1226 (9th Cir. 2022). Plaintiff has not established

6    that she has a condition that "substantially limits" any of the foregoing activities.

7         "Substantially limited" means that a person is "significantly restricted as to

8    condition, manner or duration under which [she] can perform [the] particular major life

9    activity as compared to . . . [an] average person in the general population." *Coons*, 383

10   F.3d at 885 (alterations added). "Temporary, non-chronic impairments of short duration,

11   with little or no long term or permanent impact, are usually not disabilities." *Ravel v.

12   Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1068 (E.D. Cal. 2017) (citing *Wilmarth v.

13   City of Santa Rosa*, 945 F. Supp. 1271, 1276 (N.D. Cal. 1996)).

14        Plaintiff's suicide attempt does not meet any of the foregoing definitions. Not

15   surprisingly, undersigned counsel could not find *any* legal authority in the Ninth Circuit,

16   (or anywhere else in the United States), which would categorically classify all persons

17   who attempt suicide as persons with a permanent disability under the ADA. Moreover,

18   even if Plaintiff attempted to argue that her suicide attempt was merely a manifestation of

19   her underlying mental health issues, Plaintiff has not shown that her underlying mental

20   health issues would qualify as a "disability" under the ADA, because Plaintiff has not

21   offered any evidence that her mental health conditions "substantially limited" any of her

22   major life activities.

23        More significantly, Plaintiff never requested any kind of accommodation based on

24   her underlying mental health issues or her suicide attempt, making it impossible for

25   Plaintiff to argue that her underlying mental health issues were sufficient to constitute a

26   "disability" under the ADA.

Likewise, Plaintiff cannot show that CBI terminated Plaintiff *because of* her claimed mental health conditions or her prior suicide attempt, which occurred more than five (5) months before her termination. At best, Plaintiff can only argue that CBI inquired as to whether Plaintiff was feeling okay when CBI developed concerns that Plaintiff might be a risk to herself, or others based on her suddenly unusual conduct.

By Plaintiff's logic, an employer and its employees could never ask a person with a history of suicide attempts about that person's wellbeing, nor could an employer offer to provide any support to such a person. The ADA was obviously not intended to lead to such an absurd result, especially in situations like this case, where CBI actually has expertise in responding to mental health emergencies, including suicide attempts. The ADA would be turned completely on its head if an employer could be punished for simply trying to help an employee who might be suicidal.

**D.    There Is No Evidence That CBI Discriminated Against Plaintiff "Because of" a Purported Disability**

"An employee bears the burden of proving that he was discriminated against 'because of' a disability." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 994 (9th Cir. 2007); *see also Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002) ("The employee's ultimate burden of proof in all cases remains the same: to show by a preponderance of the evidence that the challenged employment decision was 'because of' discrimination.").

Plaintiff cannot offer any admissible evidence that CBI took any adverse employment action against her "because of" an alleged disability. First, Plaintiff did not have a disability under the ADA for the reasons already outlined above. Second, Plaintiff never even claimed to have a disability while she was employed at CBI. Third, CBI did not know that Plaintiff had any purported disability (because she never informed CBI about a disability). Fourth, CBI terminated Plaintiff because she tested positive for an

illegal drug that is not protected by the ADA. Fifth, there is no evidence that CBI took any adverse actions against Plaintiff "because of" her suicide attempt (or her claimed mental health conditions). In fact, Plaintiff has not offered any admissible evidence to establish that any of CBI's conduct was motivated by a desire to discriminate against Plaintiff. Rather, the evidence suggests that CBI was simply trying to ensure that Plaintiff was not a danger to herself or others.

Accordingly, Plaintiff cannot satisfy any of the required elements of a claim under the ADA. *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citing *Allen v. Pac. Bell,* 348 F.3d 1113, 1114 (9th Cir. 2003)) ("To establish a prima facie case for failure to accommodate under the ADA, [Plaintiff] must show that "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability.") (alterations in original).

### E.    Plaintiff Cannot Establish a Claim of Punitive Damages

This Court should grant summary judgment on Plaintiff's punitive damages claim because Plaintiff cannot establish an ADA discrimination claim as a matter of law. However, even if it were assumed, for the sake of argument, that Plaintiff's underlying ADA claim could survive summary judgment, Plaintiff's punitive damages claim would still fail as a matter of law because there is no evidence to establish the requisite "evil mind" necessary to bring a claim of punitive damages.

First, Plaintiff cannot demonstrate that CBI acted with "malice" or "reckless indifference" to Plaintiff's rights under the ADA. *Kolstad v. AM. Dental Ass'n*, 527 U.S. 526, 538-39 (1999) (citing *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995) ("'[W]here there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not,

1  and indeed should not, submit the issue of punitive damages to the jury.'") (alteration in

2  original).

3      In this case, there is no evidence to establish that CBI acted with the requisite

4  malicious or reckless state of mind. Instead, the evidence demonstrates: (1) Plaintiff

5  never claimed to have a disability; (2) Plaintiff never requested an accommodation for a

6  disability; (3) CBI referred Plaintiff for a drug test based on two independent witnesses

7  who deemed Plaintiff's behavior to be highly unusual; and (4) CBI terminated Plaintiff

8  because she tested positive for an illegal drug that is not protected under the ADA.

9      Second, the Supreme Court has recognized that "agency principles limit vicarious

10  liability for punitive awards." *Kolstad*, 527 U.S. at 541; *see also id*. at 539-40 ("The

11  inquiry does not end with a showing of the requisite 'malice or . . . reckless indifference'

12  on the part of certain individuals . . . The plaintiff must impute liability for punitive

13  damages to [the employer].") (alteration added). In this case, Plaintiff has not even

14  *alleged* a theory of respondeat superior liability, (*see* Complaint at pp. 1-9), let alone

15  offered evidence to establish a claim of respondeat superior liability. *Id*. at 528 (citing

16  RESTATEMENT (SECOND) OF TORTS § 909 cmt. b) ("Holding such an employer liable,

17  however, is in some tension with the principle that it is 'improper . . . to award punitive

18  damages against one who himself is personally innocent and therefore liable only

19  vicariously.'").

20  **III.   CONCLUSION**

21      Based on the foregoing, Defendant CBI respectfully asks this Court to grant

22  summary judgment and dismiss all of Plaintiff's claims with prejudice.

23  / / /

24  / / /

25  / / /

26  / / /

RESPECTFULLY SUBMITTED this 7th day of April, 2023.

**GRASSO LAW FIRM, P.C.**

By      */s/ Robert J. Lydford*
Robert Grasso, Jr.
Robert J. Lydford
Karl J. Gruse
2250 East Germann Road, Suite 10
Chandler, Arizona  85286
   Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of April, 2023, I electronically filed the foregoing document with the United States District Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Amanda Kuklinski, Esq.
Kelsey Whalen, Esq.
**WEILER LAW PLLC**
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
akuklinski@weilerlaw.com
kwhalen@weilerlaw.com
   Attorneys for Plaintiff


By: */s/ Aly Shomar-Esparza*